#26162, #26163-a-GAS

**2012 S.D. 55**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

ADAM OLSON,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
TRIPP COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KATHLEEN F. TRANDAHL
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
    and appellee.

SANDY J. STEFFEN
Gregory, South Dakota                    Attorney for defendant
    and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 17, 2012

OPINION FILED **06/27/12**

SEVERSON, Justice

[¶1.]     Adam Olson entered into a plea agreement with the State, under the terms of which he pleaded guilty to one count of grand theft and one count of aggravated eluding of a law enforcement officer.  Olson also admitted to being a habitual offender.  In addition, Olson pleaded guilty to an additional count of grand theft, which the State charged him with, in a separate Information.  Olson later filed a motion to withdraw his guilty pleas.  The circuit court denied his motion and sentenced Olson to fifteen years for the grand theft conviction and two years for the aggravated eluding of a law enforcement officer conviction.  Olson's sentence for aggravated eluding of a law enforcement officer was to run consecutive to his sentence for grand theft.  The court also sentenced Olson to serve ten years for the grand theft conviction that was charged in the separate Information.  This sentence was to be served consecutive to Olson's other sentences.  Olson appeals, raising the following issues: (1) whether the circuit court abused its discretion in denying Olson's motion to withdraw his guilty pleas; (2) whether Olson's sentences constituted cruel and unusual punishment under the Eighth Amendment.  We affirm.

## BACKGROUND

[¶2.]     In Tripp County File 10-156, the State filed an Information charging Olson with one count of third-degree burglary, five counts of grand theft, and one count of aggravated eluding of a law enforcement officer.  The State asserted that Olson committed these crimes on November 15, 2010.  The State also filed a Part II

Information, alleging Olson was a habitual offender.  The charge of third-degree burglary was later dismissed.

[¶3.]        In Tripp County File 11-12, the State filed a separate Information charging Olson with two counts of grand theft.  These charges arose from an incident that occurred on July 29, 2010.

[¶4.]        Olson was arraigned on the charges for both files in January 2011.  During the arraignment hearing, the circuit court explained to Olson the elements of the crimes he was charged with, as well as each of his constitutional rights.  The circuit court then advised Olson: "[I]f you plead guilty to these charges, you would be found guilty, just as if you had a trial, and you would be giving up the rights I have just gone over with you."  The circuit court asked Olson if he understood his rights and the charges against him.  He indicated that he did.  Olson pleaded not guilty to each of the charges.

[¶5.]        Olson later entered into a written plea agreement with the State.  The terms of the plea agreement specified that, for the Information filed in Tripp County File 10-156, Olson would plead guilty to one count of grand theft and one count of aggravated eluding of a law enforcement officer.  Olson also agreed to admit to a Part II Information alleging that he had been previously convicted of grand theft on August 24, 2005.  In exchange, the State agreed to dismiss all remaining charges in Tripp County File 10-156.  For the Information filed in Tripp County File 11-12, Olson agreed to plead guilty to one count of grand theft, and the State agreed to dismiss the remaining count of grand theft.

[¶6.]     A change of plea hearing was held in February 2011. During this hearing, the circuit court again explained to Olson the elements of the crimes he was charged with and each of his constitutional rights. Olson indicated that he understood the charges and his rights. The circuit court also advised Olson that if he entered a plea of guilty to any of the charges, he would waive his constitutional rights. Olson indicated that he understood.

[¶7.]     The circuit court then inquired as to the events that took place November 15, 2010. Olson admitted that he and other individuals entered the parking lot of Grossenburg Implement in Tripp County and loaded a 2010 John Deere Gater onto a trailer. The trailer was attached to a truck that Olson drove away from the scene. Olson testified that a police officer began pursuing him after he left Grossenburg Implement. Olson drove approximately two or three miles and eluded the officer. He stated that he then "ditched the trailer" and "went home." The circuit court found that there was a sufficient factual basis to support Olson's guilty pleas for the charges of grand theft and aggravated eluding of a law enforcement officer in Tripp County File 10-156. The court accepted Olson's guilty pleas for these charges.

[¶8.]     The circuit court then addressed the factual basis for the Part II Information, which alleged that Olson was a habitual offender. Olson admitted that he was convicted of grand theft on August 24, 2005 in Aurora County, South Dakota. The circuit court found that there was a sufficient factual basis for this charge.

[¶9.]     Finally, the circuit court inquired as to the events that took place July 29, 2010. Olson admitted that he and other individuals broke into Grossenburg Implement through the front gate and stole a Honda generator. After canvassing Olson regarding the details of the incident, the circuit court found that there was a sufficient factual basis to support Olson's plea of guilty to the charge of grand theft in Tripp County File 11-12. The court accepted Olson's plea of guilty as to this charge.

[¶10.]     Olson later filed a motion to withdraw his guilty pleas. The circuit court held a hearing on Olson's motion in July 2011. During the hearing, Olson testified that he suffered from Attention Deficit Disorder and was not taking medication for this condition at the time he entered his pleas. Olson also testified that he pleaded guilty to the charges because his father pressured him to do so. According to Olson, at the time he entered his guilty pleas, his father was in very poor health due to cancer and a back injury.

[¶11.]      Olson initially testified that he did not remember the circuit court reviewing his constitutional rights during the plea hearing. Later in his testimony, however, Olson seemed to admit that he remembered the court reviewing his constitutional rights. Nonetheless, Olson contended that he did not understand the rights he gave up by pleading guilty:

> Q: So, when the Judge asked you if you understood those rights, and you said yes, were you telling the truth?
>
> A: No.
>
> Q: Why didn't you just tell the court that you didn't understand those rights?

A: Because I didn't want everybody to think I'm an idiot.

Q: And why didn't you tell me as your attorney that you didn't understand those rights?

A: I don't know. It was just really fast pace, and everything just moves really fast, and I have a tendency just to answer the questions as short as possible.

[¶12.] Olson testified that he did not understand the charges against him and, in particular, he did not understand the Part II Information. He further testified that when he provided the factual basis to the circuit court, he merely recited facts he read off of a police report prior to the hearing.

[¶13.] The circuit court found that Olson's testimony was not credible. The court also found that the advisement of rights was sufficient and that Olson's plea was entered knowingly and voluntarily. Olson's motion to withdraw his guilty pleas was denied.

[¶14.] Olson was sentenced in September 2011. For the charge of grand theft in Tripp County File 10-156, Olson was sentenced to 15 years in prison. For the charge of aggravated eluding of a law enforcement officer, Olson was sentenced to two years in prison, which was to be served consecutive to the sentence for the charge of grand theft in Tripp County File 10-156.

[¶15.] For the charge of grand theft in Tripp County File 11-12, Olson was sentenced to ten years in prison. This sentence was to be served consecutive to Olson's other sentences.

## DISCUSSION

[¶16.]     **1.     Whether the circuit court abused its discretion in denying Olson's motion to withdraw his guilty pleas**

[¶17.]      Olson argues that the circuit court abused its discretion in denying his request to withdraw his guilty pleas.  SDCL 23A-27-11 provides:

> A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice a court after sentence may set aside a judgment of conviction and permit the defendant to withdraw his plea.

[¶18.]      "The withdrawal of a guilty plea before the imposition of sentence is within the sound discretion of the [circuit] court." *State v. Wahle*, 521 N.W.2d 134, 137 (S.D. 1994) (quoting *State v. Grosh,* 387 N.W.2d 503, 505 (S.D. 1986)).  When a defendant moves to withdraw a plea prior to sentencing, a court should exercise its discretion liberally in favor of withdrawal.  *Id.* (quoting *Grosh,* 387 N.W.2d at 505-06).  But "SDCL 23A-27-11 does not create an automatic right to withdraw a guilty plea." *State v. Thielsen*, 2004 S.D. 17, ¶ 15, 675 N.W.2d 429, 433 (citing *State v. Engelmann,* 541 N.W.2d 96, 100 (S.D. 1995)).  "When deciding whether to allow a criminal defendant to withdraw his plea, the [circuit] court must look at the reasons why the plea is sought to be withdrawn and if the request to withdraw is obviously frivolous, the circuit court need not grant it." *Wahle*, 521 N.W.2d at 137 (quoting *Grosh,* 387 N.W.2d at 506) (emphasis omitted).

[¶19.]      Olson alleges that the circuit court should have allowed him to withdraw his guilty plea because the plea was not entered knowingly and voluntarily.  "[A] plea is intelligent and voluntary when the accused has a full understanding of his constitutional rights and, having that understanding, waives [those] rights by a plea of guilty." *State v. Beckley*, 2007 S.D. 122, ¶ 8, 742 N.W.2d

841, 843 (quoting *Lodermeier v. State*, 273 N.W.2d 163, 164 (S.D. 1978)).  We have

explained,

> In *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969), the United States Supreme Court recognized that "a plea of guilty is more than an admission of conduct; it is a conviction."  Therefore, it is critical not only that a defendant be advised of his rights relating to self-incrimination, trial by jury, and confrontation, but also that the defendant intentionally relinquish or abandon known rights.

*Monette v. Weber*, 2009 S.D. 77, ¶ 10, 771 N.W.2d 920, 924 (citing *Boykin*, 395 U.S.

at 243 n.5, 89 S. Ct. at 1712 n.5).

[¶20.]      "The record must show in some manner that the defendant understood

his rights in order for the defendant's plea to be entered intelligently and

voluntarily."  *State v. Apple*, 2008 S.D. 120, ¶ 10, 759 N.W.2d 283, 287 (citing

*Beckley,* 2007 S.D. 122, ¶ 10, 742 N.W.2d at 844)).  "[W]e look to 'the totality of the

circumstances when ascertaining whether a plea was made knowingly and

voluntarily.'"  *Beckley*, 2007 S.D. 122, ¶ 14, 742 N.W.2d at 846 (quoting *State v.

Goodwin*, 2004 S.D. 75, ¶ 11, 681 N.W.2d 847, 852).  "In examining the 'totality of

the circumstances' we have taken into consideration the following factors: the

defendant's age; his prior criminal record; whether he is represented by counsel; the

existence of a plea agreement; and the time between advisement of rights and

entering a plea of guilty."  *Id.* (quoting *Goodwin*, 2004 S.D. 75, ¶ 11, 681 N.W.2d at

852).

[¶21.]      Olson was twenty-four years old at the time he was sentenced.  He had

previous experience with the criminal justice system as a juvenile and an adult.

Olson was represented by counsel at each stage of the proceedings.  During the

change of plea hearing, he indicated that he was content with his legal counsel. He also indicated that he had sufficient time to discuss the charges he was facing with his legal counsel.* During both the arraignment hearing and the change of plea hearing, the circuit court explained to Olson each of his constitutional rights. In fact, the court reviewed with Olson each of his constitutional rights immediately prior to Olson's entry of his guilty pleas. Olson repeatedly indicated that he understood the rights he was giving up by pleading guilty. These facts support the circuit court's finding that Olson entered his guilty pleas knowingly and voluntarily.

*Misapprehension of the facts*

[¶22.]       Olson entered into a written plea agreement with the State. Part of the agreement specified that, for the Information in Tripp County File 10-156, Olson would plead guilty to one count of grand theft and one count of aggravated eluding of a law enforcement officer. Olson also agreed to admit to the Part II Information, which alleged that he had been previously convicted of grand theft in

---

\*       Specifically, the following exchange took place between Olson and the circuit court:

> THE COURT: One right that you have is the right to an attorney and you appear here today with Ms. Steffen. Does she represent you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you had enough time to talk to her about these charges?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you want her to continue to represent you?
>
> THE DEFENDANT: Yes.

Aurora County on August 24, 2005. In exchange, the State dismissed all remaining charges in Tripp County File 10-156. The plea agreement specified that the charges Olson was facing included "[f]ive counts of Grand Theft . . . a Class Four (4) Felony, each count punishable by a maximum of ten (10) years in the penitentiary and a fine of $20,000.00." Although Olson signed the plea agreement, he argues that he did not understand he had been charged with five separate counts of grand theft. Olson argues that he thought he could only be charged with one count of grand theft for the November incident.

[¶23.]     We have previously stated, "In plea hearings, the record must demonstrate that defendants not only understand the constitutional and statutory rights they are waiving by pleading guilty, but also fully understand the charges for which they are admitting guilt." *State v. Nachtigall*, 2007 S.D. 109, ¶ 9, 741 N.W.2d 216, 220. In this case, after reviewing the record in its entirety, we hold that the circuit court did not abuse its discretion in finding that Olson understood he was charged with five separate counts of grand theft.

[¶24.]     The transcript of the arraignment hearing reveals that the circuit court specifically asked, "Mr. Olson, do you understand what you are charged with?" Olson responded, "Yes." The court then went through each count of grand theft Olson was charged with in Tripp County File 10-156 and explained the maximum penalty for each charge. Olson indicated that he understood the maximum penalty for each charge.

[¶25.]     Moreover, the plea agreement Olson signed clearly stated that he had been charged with five counts of grand theft and one count of aggravated eluding of

a law enforcement officer. During the change of plea hearing, the circuit court went to great lengths to ensure that Olson understood the plea agreement:

> THE COURT: So, my understanding of the plea agreement, Mr. Olson, is this — and please correct me if I'm wrong — in File 10-156, which is the November 15th incident, you will be pleading to Count 4 Grand Theft, and Count 7 Eluding.
>
> THE DEFENDANT: Yes.
>
> THE COURT: The State will dismiss the remaining charges in that file. And in File 11-12, which is the July 29th incident, you'll be pleading to one count of Grand Theft. Which count will he be pleading to?
>
> MS. STEFFEN: We can do Count 1.
>
> THE COURT: All right. Thank you. And then Count 2 will be dismissed. Is that your understanding of the plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Now, this plea agreement has been reduced to writing, and you did sign that agreement today; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And this is your signature?
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: And prior to entering in to [sic] this plea agreement, did you have enough time to talk to your attorney about this agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And does it completely resolve the charges from July 29th and November 15th?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. And this plea agreement is acceptable to you?

THE DEFENDANT: Yes.

[¶26.]    At the hearing on Olson's motion to withdraw his guilty plea, the circuit court found Olson's testimony that he did not understand he had been charged with five separate counts of grand theft in Tripp County File 10-156 was not credible. Based on our review of the record, we hold that the circuit court did not abuse its discretion in making this finding.

[¶27.]    Olson next argues that he did not understand what was being referred to as the "Part II Information" in the written plea agreement. He contends he was not aware that, by admitting to the Part II Information, he could be subjected to an enhanced sentence. During the change of plea hearing, the following exchange took place between Olson and the circuit court:

> THE COURT: Mr. Olson, we will then look at the Part II, habitual-offender information. Do you understand that all rights that I went over with you also apply to this Part II information?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And do you understand that you do have a right to a jury trial on this information, and at that jury trial all 12 jurors would have to unanimously agree that you are the same person who has this prior conviction in Aurora County, South Dakota?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you have a copy of that in front of you as well?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And that says that you were convicted of Grand Theft on August 24th, 2005 in Aurora County, South Dakota. Do you understand what you are charged with?

- 11 -

THE DEFENDANT: Yes.

THE COURT: And you understand that, if you plead guilty to this charge, that the maximum penalties are enhanced by one level; so the Grand Theft goes from ten years in prison and a $20,000 fine to 15 years and a $30,000 fine; and the Eluding goes from two years in prison and a $2,000 fine up to five years in prison and a $10,000 fine. Do you understand that that's the consequences of this Part II information?

THE DEFENDANT: Yes, ma'am.

[¶28.] A review of the transcript of the change of plea hearing reveals that the circuit court carefully explained the Part II Information to Olson. The court specifically explained to Olson that, if he admitted to being a habitual offender, his sentences for grand theft and aggravated eluding of a law enforcement officer would be enhanced. Olson unequivocally stated that he understood. The record thus supports the circuit court's finding that Olson knowingly and voluntarily admitted to being a habitual offender.

*Coercion and mental defect*

[¶29.] Olson notes that the day after the January 2011 arraignment, he made a request to see a mental health professional at the jail so that he could "be put back on" medication he stopped taking without a doctor's approval. This request was denied. On January 20, 2011, Olson made a second request to see a mental health professional. In this request, Olson alleged, "I hear voices that tell me to do stuff." This request was also denied. Olson argues his requests to see a mental health professional support his argument that he was unable to understand his constitutional rights or the nature of the crimes with which he was charged. As further support for his argument, Olson notes that he attempted to commit suicide

while he was detained. Olson also alleges that he pleaded guilty to the charges because his father pressured him to do so.

[¶30.] The circuit court rejected Olson's arguments and found: "There is no evidence that he had any diminished mental capacity." The court noted that Olson had been advised of his rights on four separate occasions. She accused him of having a selective memory only for issues that supported his arguments. The court also pointed out that Olson was not honest about his education. During the hearing on Olson's motion to withdraw his plea, Olson testified that he never obtained a General Educational Development (GED) diploma and that his highest level of education was the seventh grade. In fact, Olson had obtained a GED.

[¶31.] At the change of plea hearing, the circuit court ordered that Olson undergo a psychological evaluation to assist in determining his competency to proceed to trial, as well as to determine his state of mind at the time of his alleged crimes. The psychological evaluation was performed by Dr. Michael A. Stone. As part of the evaluation, Dr. Stone performed various tests to evaluate Olson's intelligence. The results of these tests indicated that Olson was mildly to moderately mentally retarded. Dr. Stone also observed that Olson's demeanor during the evaluation indicated he had some significant cognitive defects. But Dr. Stone went on to state in his report,

> Upon further inquiry and review of the records, however, some
> indications began to emerge that Mr. Olson was attempting to
> portray himself as having some significant cognitive deficits, as
> well as experiencing psychotic episodes wherein he was hearing
> voices. It appeared his portrayal of himself in this fashion was
> likely motivated by his desire to be found incompetent to
> proceed to trial, and as such, would avoid, at least temporarily,
> being convicted and sent to prison.

[¶32.]     Ultimately, Dr. Stone concluded,

> Mr. Olson made a very deliberate attempt to deceive this
> examiner in order to ultimately be declared incompetent to
> proceed to trial. . . . Mr. Olson . . . was dishonest and/or evasive
> in his responses to many of the inquires put to him by the
> investigators.  All of these observations would suggest Mr. Olson
> is (1) not mentally retarded, (2) not experiencing auditory
> hallucinations, and (3) by his behaviors confirms the fact that he
> does, in fact, have a reasonable understanding of the operations
> of the legal system, the seriousness of the charges against him,
> and the ability to properly assist his counsel in putting on a
> defense.

[¶33.]     The circuit court considered Dr. Stone's report during the hearing on

Olson's motion to withdraw his guilty pleas.  The court found that "just as [Olson]

'made a deliberate attempt to deceive Dr. Stone to be found incompetent' —in this

courtroom today, the court finds that Mr. Olson has made a deliberate attempt to

deceive this court in order to get the court to allow him to withdraw his plea."

[¶34.]     We believe the record supports the circuit court's finding.  Olson failed

to present any evidence to support his claim that his alleged mental condition

rendered him incapable of knowingly and intelligently entering a plea of guilty.

*See Thielsen*, 2004 S.D. 17, ¶¶ 31-32, 675 N.W.2d at 437 (holding that the circuit

court did not abuse its discretion in denying a defendant's pre-sentence motion to

withdraw his guilty plea because the defendant "relie[d] solely on his own

assertions" and "presented no evidence that his mental capacity was diminished").

Moreover, we find no error in the circuit court's rejection of Olson's assertion that

pressure from his father to accept the plea bargain rendered his guilty plea

involuntary.  "Standing alone, an assertion that a plea was made as a result of

pressures exerted by family members is not a sufficient cause to grant a motion to withdraw a plea." *Id.* ¶ 29.

*Knowing and voluntary waiver of constitutional rights*

[¶35.]     Olson testified that he did not understand the constitutional rights he surrendered by pleading guilty. We have recognized that, in order for a plea to be deemed knowing and voluntary, "[t]he record must affirmatively show . . . that the defendant understood the consequences of pleading guilty, and that the defendant explicitly waived the constitutional right against compulsory self[-]incrimination, the right to trial by jury, and the right to confront one's accusers." *Monette,* 2009 S.D. 77, ¶ 10, 771 N.W.2d at 925 (quoting *Goodwin*, 2004 S.D. 75, ¶ 23, 681 N.W.2d at 855).

[¶36.]     During Olson's arraignment hearing, the following exchange took place between the circuit court and Olson:

> THE COURT: Mr. Olson, at this time I'm going to advise you of your constitutional and statutory rights. If you have any questions about these rights, I'll answer them if I can.
>
> If you want additional time to visit with your attorney at any stage in these proceedings, you just need to let me know that and I'll give you that opportunity.

[¶37.]     The court went on to explain each of Olson's constitutional rights, including his right against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. The circuit court advised him that "if you plead guilty to these charges, you would be found guilty, just as if you had a trial, and you would be giving up the rights I have just gone over with you." The following colloquy then took place between the court and Olson:

- 15 -

THE COURT: Mr. Olson, do you understand these rights?

THE DEFENDANT: Yes.

THE COURT: Is there a problem?

MS. STEFFEN: I was just checking to make sure.

THE COURT: All right.

MS. STEFFEN: He says he's okay.

THE COURT: All right. Do you understand the rights that I went over with you?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions?

THE DEFENDANT: No.

[¶38.] Olson argues that the court's question, "Is there a problem?" indicates that Olson did not understand what was happening and that "his statement that he understood cannot be accepted at face value." This argument is without merit. After the court asked Olson if there was a problem, Olson's attorney indicated that she was checking to make sure Olson understood his rights. She then stated, "He says he's ok." Nonetheless, the court asked a second time if Olson understood his rights. He stated that he did.

[¶39.] During the change of plea hearing, the circuit court again reviewed with Olson each of the charges he was facing, as well as his constitutional rights. The court explained to Olson: "[I]f you pleaded guilty to these charges, you would be found guilty, just as if you had a trial, and you would be giving up the rights I have just gone over with you." The court asked Olson, "Mr. Olson, do you understand

these rights?" He responded, "Yes." The court asked if he had any questions. Olson stated, "No."

[¶40.]	A review of the record clearly reflects that the circuit court repeatedly advised Olson of his right to a jury trial, his right to confront his accusers, and his right against compulsory self-incrimination. The court also repeatedly explained to Olson that he would waive each of these rights by pleading guilty. Olson indicated that he understood.

[¶41.]	At the time he entered his guilty pleas, Olson was a twenty-four-year-old man who had previous experience with the criminal justice system as a juvenile and an adult. Olson also had the benefit of legal counsel at each stage of the proceedings. Olson's age, criminal record, and the presence of legal counsel, when considered in conjunction with the circuit court's repeated explanation of his constitutional rights, clearly supports the circuit court's finding that Olson's guilty pleas were entered knowingly and voluntarily. We thus cannot conclude that the circuit court abused its discretion in denying Olson's motion to withdraw his guilty pleas. *See Wahle*, 521 N.W.2d at 138 (holding that the circuit court did not abuse its discretion denying a defendant's motion to withdraw his guilty plea because "[t]he record of entry of [the defendant's] guilty plea fail[ed] to contain any objective facts whatsoever that can be viewed as reasonably justifying a mistaken impression [of the plea bargain and its effects]").

*Factual Basis for Plea*

[¶42.]	Olson also argues that there was an insufficient factual basis for the charge of grand theft in Tripp County File 11-12. We have recognized that

"[d]eveloping a factual basis on the record is essential to the plea process."

*Nachtigall*, 2007 S.D. 109, ¶ 8, 741 N.W.2d at 219. Indeed, "[w]ithout an adequate factual basis, the [circuit] court cannot assure itself and this Court the guilty plea was voluntarily and intelligently entered." *Id*. (citing *State v. Schultz*, 409 N.W.2d 655, 658 (S.D. 1987)). A court "must find a factual basis for each element of the offense." *Id*. ¶ 5 (quoting *Schultz*, 409 N.W.2d at 658). "The factual basis may come from 'anything that appears on the record.'" *Id*. (quoting *Schultz*, 409 N.W.2d at 658). Accordingly,

> reading the indictment to the defendant coupled with his
> admission of the acts described in it is a sufficient factual basis
> for a guilty plea, as long as the charge is uncomplicated, the
> indictment detailed and specific, and the admissions
> unequivocal.

*Id.* (quoting *Schultz,* 409 N.W.2d at 658).

[¶43.]     During the change of plea hearing, the prosecutor read the Information aloud. The Information alleged that Olson broke into Grossenburg Implement on or about July 29, 2010 and stole a Honda generator, which had an MSRP value of $1,680 and invoice value of $1,145.34. When the circuit court asked Olson if that was what happened, he responded, "Yes, ma'am." The circuit court then engaged in the following colloquy with Olson:

> THE COURT: Were you in Tripp [C]ounty, South Dakota on
> July 29th of 2010?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you take the Honda generator from
> Grossenburg Implement on that day?
>
> THE DEFENDANT: Yes, I did.

THE COURT: And they were not open for business at that time?

THE DEFENDANT: No.

THE COURT: And do you agree that the generator had a value of $1,000 or more?

THE DEFENDANT: Yes.

THE COURT: All right. Did anybody from Grossenburg Implement give you permission to take that generator?

THE DEFENDANT: No.

THE COURT: Where was that generator located on the property?

THE DEFENDANT: I can't — maybe in a trailer in the back of a truck or something?

THE COURT: All right. Were you there by yourself or with others?

THE DEFENDANT: With others.

THE COURT: All right. What did you do to take the generator?

THE DEFENDANT: Like — I was driving the truck.

THE COURT: Did you go in the back way?

THE DEFENDANT: No, I believe the front gate.

THE COURT: You went through the front gate?

THE DEFENDANT: Yes.

THE COURT: All right. And what were your plans for the generator?

THE DEFENDANT: I have no idea, really.

THE COURT: Were you going to sell it?

THE DEFENDANT: Yes, if we could sell it.

[¶44.]     The record demonstrates that there was a sufficient factual basis for each element of the offense. This factual basis is derived not only from the Information, but from Olson's own testimony. Based upon our review of the entire record, we hold that the circuit court did not abuse its discretion in determining that there was a sufficient factual basis to accept Olson's guilty plea as to the charge of grand theft in Tripp County File 11-12.

[¶45.]          **2.     Whether Olson's sentence constituted cruel and unusual punishment under the Eighth Amendment.**

[¶46.]     Olson argues that the sentences he received for each of the crimes he pleaded guilty to constituted cruel and unusual punishment under the Eighth Amendment. Olson emphasizes that his co-defendants received lesser sentences than he did. In evaluating Olson's claim, "[w]e first determine whether the sentence appears grossly disproportionate." *See State v. Jones,* 2012 S.D. 7, ¶ 19, 810 N.W.2d 202, 207. "To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court." *Id.* (quoting *State v. Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d 575, 580). "We also consider 'the gravity of the offense and the harshness of the penalty;' and other relevant factors, such as the effect this type of offense has on society." *Steichen v. Weber*, 2009 S.D. 4, ¶ 30, 760 N.W.2d 381, 394 (*State v. Dubois*, 2008 S.D. 15, ¶ 41, 746 N.W.2d 197, 210). "If the sentence does not appear grossly disproportionate, no further review is necessary." *Id.* (quoting *Dubois*, 2008 S.D. 15, ¶ 41, 746 N.W.2d at 210) (emphasis omitted). "If the sentence does appear grossly disproportionate, an intra- and inter-jurisdictional analysis shall be conducted." *Id.* (quoting *Dubois*, 2008 S.D. 15, ¶ 41, 746 N.W.2d at 210).

[¶47.] In this case, although Olson's sentences are significant, we cannot conclude they are grossly disproportionate. All of Olson's sentences were within the statutory limitations and are thus afforded "substantial deference." *See State v. Brim*, 2010 S.D. 74, ¶ 22, 789 N.W.2d 80, 87 (citation omitted). At the sentencing hearing, the circuit court emphasized that Olson recruited others to help him commit the thefts, and that he was the "one in charge." The court noted that Olson "took control of the merchandise after it had been stolen." Olson was also in charge of paying his co-defendants for their involvement in the crimes.

[¶48.] In addition, the circuit court observed that Olson had a prior criminal history, which included juvenile convictions for grand theft and third-degree burglary. While under the supervision of the Department of Corrections, he "absconded twice from . . . the transitional learning program. . . ." Two weeks after discharge from the Department of Corrections, he was arrested for grand theft. The circuit court noted that Olson had a "[d]ocumented history of failing to appear for court and failure to comply with court orders." Based upon Olson's "documented history," the court found there was a low probability that Olson would be rehabilitated.

[¶49.] The circuit court properly considered the gravity of Olson's offenses, the effect those offenses have on society, Olson's criminal record, and the likelihood of recidivism. *See Steichen,* 2009 S.D. 4, ¶ 31, 760 N.W.2d at 394. We do not find that Olson's sentences are grossly disproportionate to his crimes. As such, no further review is necessary.

[¶50.] Affirmed.

[¶51.]        GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and

WILBUR, Justices, concur.