#27112-a-LSW

**2015 S.D. 14**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

BRANDON LEWIS MORAN,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
LYMAN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KATHLEEN F. TRANDAHL
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

CAROLINE SRSTKA
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
        and appellee.


STEVEN R. SMITH
Chamberlain, South Dakota                    Attorney for defendant
        and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2015

OPINION FILED **03/18/15**

#27112

WILBUR, Justice

[¶1.] Brandon Moran appeals his conviction for possession of methamphetamine (meth). We affirm.

## Background

[¶2.] On January 17, 2014, Officer Brian Biehl observed a motor vehicle, with no front license plate, exceeding the speed limit on I-90 in Lyman County. Officer Biehl activated his lights and siren and followed the vehicle for several miles. Eventually, Officer Biehl called State Radio to report the pursuit. After following the vehicle for five miles, the driver finally pulled over. Moran was sitting in the passenger seat. Moran's girlfriend, Michelle Menard, was sitting in the driver's seat, and Moran's friend, Adam Stoneman, was sitting in the back seat.

[¶3.] Officer Biehl ordered each of the occupants to exit the vehicle. He then handcuffed and searched them. Officer Biehl found a 9mm bullet and 20 to 30 empty jeweler baggies commonly used to distribute controlled substances in Stoneman's right pocket. In the vehicle, Officer Biehl found a digital scale, approximately one-eighth ounce of meth, and two firearms. One firearm was found partially hidden under the driver's seat, while the other firearm was found in a bag of clothes. Officer Biehl searched Moran's coat, which was located in the vehicle, and found a small jeweler baggie containing a white powder residue. The substance was never tested.

[¶4.] Moran, Menard, and Stoneman were ordered to sit on the ground until additional law enforcement officers arrived at the scene. When the officers arrived, Officer Biehl asked Moran, Menard, and Stoneman to stand up. As Moran stood up,

-1-

a glass pipe, typically used for smoking meth, fell from his person to the ground. Moran stepped on the pipe. Officer Biehl examined the glass pipe and observed white residue. The residue field tested positive for meth.

[¶5.]     Moran was arrested and charged with possession of meth in violation of SDCL 22-42-5, possession with intent to distribute in violation of SDCL 22-42-2, and possession of a firearm by a felon in violation of SDCL 22-14-15.1. The State also filed a part II information under SDCL 22-7-7. The part II information was based on two prior felony convictions for attempted first-degree robbery and possession of a controlled substance.

[¶6.]     An arraignment on the charged offenses was held on February 24, 2014. The parties informed the court that they had reached a plea agreement. As part of the agreement, Moran agreed to plead guilty to possession of meth. The State agreed to dismiss the two remaining charges and the part II information. The State further indicated that as part of the plea agreement, although SDCL 22-6-11 provides for presumptive probation, the State intended to argue that "this is not a presumptive probation situation."* The court advised Moran that the maximum

---

*     The following exchange occurred at arraignment:

> **The State:** I guess, as a heads up, the State will be arguing that this is not a presumptive probation situation. I'm sure that [defense counsel] will be allowed to make the arguments he deems fit regarding whether exceptional circumstances, or whatever the statutes says, exist for you to do otherwise.

> **The court:** Mr. Moran, is that your understanding of this plea agreement?

> **Moran:** Yes.

penalty for possession of meth is five years in the South Dakota State Penitentiary and a $10,000 fine. Moran responded that he understood the maximum penalty.

[¶7.] The circuit court conducted a sentencing hearing on May 19, 2014. Moran acknowledged at the hearing that he had read his presentence report and he did not have any additions or corrections to the report. At the hearing, the State argued that the presumptive probation under SDCL 22-6-11 should be ignored, and, that due to the facts of the case, the court should sentence Moran to the penitentiary. The court concluded that Moran posed a significant risk to the public, and aggravating circumstances warranted departure from the presumptive probation under SDCL 22-6-11. The aggravating circumstances were based on information found in the presentence report. The court sentenced Moran to five years in the penitentiary. Moran appeals and raises the following two issues:

1. Whether Moran entered his guilty plea voluntarily, knowingly, and intelligently.

2. Whether Moran's sentence was grossly disproportionate to the offense committed.

## Analysis

[¶8.] **1. Whether Moran entered his guilty plea voluntarily, knowingly, and intelligently.**

[¶9.] Moran argues that he did not enter a voluntary, knowing, and intelligent guilty plea. Moran claims that he entered his guilty plea on the mistaken belief that he would receive a sentence of probation under SDCL 22-6-11. Moran alleges that he received no warning, and, consequently, he had no reason to know, that the circuit court was going to find aggravating circumstances allowing for departure from the presumptive probation. It is the position of Moran that

SDCL 22-6-11 must be interpreted to require the circuit court to give notice of its intent to depart from the presumptive probation prior to the sentencing hearing. Otherwise, according to Moran, defense counsel is denied an opportunity to prepare argument and present evidence in mitigation of the aggravating circumstances.

[¶10.]     We first address whether a circuit court must notify a defendant prior to sentencing that it intends to depart from the presumptive sentencing under SDCL 22-6-11. Statutory interpretation is reviewed de novo. *In re Taliaferro*, 2014 S.D. 82, ¶ 6, 856 N.W.2d 805, 806 (quoting *In re Estate of Ricard*, 2014 S.D. 54, ¶ 8, 851 N.W.2d 752, 755). SDCL 22-6-11 provides:

> The sentencing court shall sentence an offender convicted of a Class 5 or Class 6 felony, except those convicted under §§ 22-11A-2.1, 22-18-1, 22-18-1. 05, 22-18-26, 22-19A-1, 22-19A-2, 22-19A-3, 22-19A-7, 22-19A-16, 22-22A-2, 22-22A-4, 22-24A-3, 22-22-24.3, 22-24-1.2, 22-24B-2, 22-24B-12, 22-24B-12.1, 22-24B-23, 22-42-7, subdivision 24-2-14(1), 32-34-5, and any person ineligible for probation under § 23A-27-12, to a term of probation. The sentencing court may impose a sentence other than probation if the court finds aggravating circumstances exist that pose a significant risk to the public and require a departure from presumptive probation under this section. If a departure is made, the judge shall state on the record at the time of sentencing the aggravating circumstances and the same shall be stated in the dispositional order. Neither this section nor its application may be the basis for establishing a constitutionally protected liberty, property, or due process interest.

The plain language of SDCL 22-6-11 does not support Moran's argument. The statute contains no explicit language requiring the procedure Moran asserts. Rather, the statute sets out a procedure requiring a circuit court to "state on the record at *the time of sentencing* the aggravating circumstances and the same shall be stated in the dispositional order." *Id.* (emphasis added). There is no

requirement that the court must notify a defendant before the sentencing hearing that it intends to depart from presumptive probation under SDCL 22-6-11.

[¶11.]     This conclusion is further supported in our recent decision, *State v. Hernandez*, 2014 S.D. 16, 845 N.W.2d 21.  In *Hernandez*, the defendant pleaded guilty to driving under the influence and an amended part II information, charging a fourth offense DUI.  2014 S.D. 16, ¶ 6, 845 N.W.2d at 22.  The sentencing court identified aggravating circumstances and, consequently, departed from the presumptive probation in SDCL 22-6-11.  *Id.* ¶ 9.  On appeal, we held that the record demonstrated that the court complied with the dictates of SDCL 22-6-11 because the "court found the existence of aggravating circumstances and made its findings on the record at the sentencing hearing[.]"  *Id.* ¶ 12, 845 N.W.2d at 23.  Thus, neither *Hernandez* nor the plain language of SDCL 22-6-11 support Moran's interpretation that the statute requires an additional procedural step that the circuit court must provide notice of its intent to depart from the presumptive probation.  *See id.*

[¶12.]     Moreover, the record establishes that, in this case, the circuit court complied with the requirements of SDCL 22-6-11.  As in *Hernandez*, the court found the existence of aggravating circumstances during the sentencing hearing and made its findings on the record.  *See* 2014 S.D. 16, ¶ 12, 845 N.W.2d at 23.  The court found the following aggravating circumstances: possession of meth was Moran's third felony in eight years; Moran's two prior felonies were attempted first-degree robbery and possession of a controlled substance; Moran had a history of failing to comply with conditional release; Moran violated probation on each of his two

previous felony convictions; Moran committed the underlying felony while on probation for his prior felony possession of a controlled substance conviction; Moran had previously participated in three treatment programs; and two firearms, drugs, and drug paraphernalia were found in the vehicle at the time of Moran's arrest.

[¶13.]		Next, we address Moran's argument as to whether he entered his plea knowingly, voluntarily, and intelligently. To satisfy due process, the circuit court must comply with certain constitutional and procedural requirements. *LeGrand v. Weber*, 2014 S.D. 71, ¶ 13, 855 N.W.2d 121, 126. By pleading guilty, a defendant gives up the right against self-incrimination, the right to confront witnesses, and the right to a trial by jury. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). "'The record must show in some manner that the defendant understood his rights in order for the defendant's plea to be entered intelligently and voluntarily.'" *State v. Outka*, 2014 S.D. 11, ¶ 32, 844 N.W.2d 598, 607 (quoting *State v. Apple*, 2008 S.D. 120, ¶ 10, 759 N.W.2d 283, 287).

[¶14.]		We have previously said that "codified criminal procedural rules act 'to ensure that guilty pleas and pleas of nolo contendere are voluntary and knowing and to safeguard against violations of a defendant's right to due process.'" *Apple*, 2008 S.D. 120, ¶ 10, 759 N.W.2d at 287 (quoting *State v. Miller*, 2006 S.D. 54, ¶ 17, 717 N.W.2d 614, 619). These codified criminal rules act as merely "a 'procedural safeguard' for determining that a guilty plea is knowing and voluntarily entered." *Outka*, 2014 S.D. 11, ¶ 33, 844 N.W.2d at 608 (quoting *State v. Beckley*, 2007 S.D. 122, ¶ 10, 742 N.W.2d 841, 844). A violation of the codified criminal rules does "not

necessarily vitiate a guilty plea." *Id.* (quoting *Beckley*, 2007 S.D. 122, ¶ 10, 742 N.W.2d at 844) (internal quotation marks omitted).

[¶15.]     Instead, "[w]e look to the totality of the circumstances when ascertaining whether a plea was made knowingly and voluntarily." *Id.* (alteration in original) (quoting *State v. Olson*, 2012 S.D. 55, ¶ 20, 816 N.W.2d 830, 836). "'In examining the totality of the circumstances we have taken into consideration the following factors: the defendant's age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty.'" *Id.* (quoting *Olson*, 2012 S.D. 55, ¶ 20, 816 N.W.2d at 836).

[¶16.]     The totality of the circumstances establishes that Moran knowingly, voluntarily, and intelligently entered his guilty plea. Moran, who was 27 years old at the time he was sentenced, had an extensive criminal history for his age that included convictions of attempted first-degree robbery and possession of a controlled substance. He was represented by counsel at each stage of the proceedings. The circuit court advised Moran of his constitutional and procedural rights at arraignment and at sentencing. During arraignment, the State advised Moran and the court that it intended to argue at the sentencing hearing "that this is not a presumptive probation situation." The court asked Moran if that was his understanding of the plea agreement, and he responded affirmatively. The court further advised Moran that "[t]he maximum penalty for possession of a controlled substance is five years in the South Dakota Penitentiary and a $10,000 fine." The court asked Moran if he understood, and, again, he responded affirmatively.

[¶17.] Furthermore, the circuit court found the existence of aggravating circumstances and made the findings on the record. *See Hernandez*, 2014 S.D. 16, ¶ 12, 845 N.W.2d at 23. The court noted that the aggravating circumstances were based on information in the presentence report. At the sentencing hearing, Moran acknowledged that he had read the presentence report and did not have any additions or corrections. We conclude that Moran entered his guilty plea knowingly, voluntarily, and intelligently.

[¶18.] **2. Whether Moran's sentence was grossly disproportionate to the offense committed.**

[¶19.] Moran argues his constitutional rights were violated when the circuit court sentenced him to the maximum sentence of five years imprisonment. Moran claims that the punishment he received was unconstitutionally excessive in violation of the Eighth Amendment.

[¶20.] The Eighth Amendment of the United States Constitution prohibits the imposition of cruel and unusual punishments. *State v. Brende*, 2013 S.D. 56, ¶ 34, 835 N.W.2d 131, 145; U.S. Const. amend. VIII. "When a defendant challenges a sentence as cruel and unusual under the Eighth Amendment, this Court reviews it for gross disproportionality[.]" *State v. Craig*, 2014 S.D. 43, ¶ 33, 850 N.W.2d 828, 837.

> [W]e first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. If these circumstances fail to suggest gross disproportionality, our review ends. If, on the other hand, the sentence appears grossly disproportionate, we may, in addition to examining the other *Solem* factors, conduct an intra- and inter-jurisdictional analysis to aid our comparison or remand to the circuit court to conduct

> such comparison before resentencing. We may also consider other relevant factors, such as the effect upon society of this type of offense.

*State v. Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d 575, 580 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1000, 111 S. Ct. 2680, 2704, 115 L. Ed. 2d 836 (1991)).

[¶21.] Our first consideration is whether there is a threshold showing of gross disproportionality. *State v. Buchhold*, 2007 S.D. 15, ¶ 36, 727 N.W.2d 816, 825. The circuit court noted that Moran's conduct in this case involved fleeing from law enforcement, possession, use, and intent to distribute controlled substances, and possession of a firearm. The court further acknowledged that Moran was only 27 years old at the time of the sentencing hearing and already had an extensive criminal history, including attempted first-degree robbery and possession of a controlled substance. In fact, Moran committed the underlying crime in this case while he was still on felony probation for a previous conviction of possession of a controlled substance.

[¶22.] The circuit court sentenced Moran to the maximum sentence of five years imprisonment in violation of SDCL 22-42-5. The sentence was within the statutory limits of SDCL 22-42-5. We have recognized that "a sentence within the statutory maximum will rarely be disturbed." *State v. Larsen-Smith*, 2011 S.D. 93, ¶ 5, 807 N.W.2d 817, 819 (quoting *State v. Iannarelli*, 2008 S.D. 121, ¶ 12, 759 N.W.2d 122, 125). The court concluded that the existence of the many aggravating circumstances in this case made Moran a "danger to the community" and warranted departure from the presumptive probation under SDCL 22-6-11. We agree. The

circumstances in this case "fail to suggest gross disproportionality[.]" *Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d at 580.  Therefore, our review ends.

[¶23.]	We affirm.

[¶24.]	GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.