#25918-a-DG

**2011 S.D. 93**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

JASON THOMAS LARSEN-SMITH,               Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOSEPH NEILES
Judge

* * * *

MARTY J. JACKLEY
Attorney General

MAX A. GORS
Assistant Attorney General
Pierre, South Dakota                     Attorneys for plaintiff
                                      and appellee.

MICHELLE M. THOMAS
Minnehaha County Public
 Defender's Office
Sioux Falls, South Dakota                Attorneys for defendant
                                      and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 14, 2011

OPINION FILED   **12/21/11**

GILBERTSON, Chief Justice

[¶1.]      Jason Thomas Larsen-Smith appeals his sentence for manslaughter in the first degree.  Larsen-Smith was sentenced to life without parole.  Larsen-Smith argues the sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment.  Because the sentence is within the statutory maximum and does not appear to be grossly disproportionate, the sentence is affirmed.

*Facts*

[¶2.]      In the early morning hours of December 18, 2009, Steven Schade of the South Dakota Highway patrol observed Larsen-Smith's vehicle cross over the center line on 41st Street in Sioux Falls.  When Schade activated his lights Larsen-Smith attempted to outrun him.  Schade pursued.  The pursuit continued through Sioux Falls, reaching speeds of 90 miles per hour.  At the intersection of 12th Street and Ellis Road, Larsen-Smith ran a red light and collided with a Ford Ranger that was proceeding through the intersection in the other direction.  The driver of the Ford Ranger died at the scene.  Larsen-Smith was taken to the hospital, where a blood draw, taken at least one hour after the accident, established his blood alcohol level to be .12 percent.

[¶3.]      Larsen-Smith was charged by indictment with second-degree murder, first-degree manslaughter, aggravated eluding, driving while revoked, driving under the influence, and possession of two ounces or less of marijuana.  A part two information alleged the DUI was a fifth offense.  Larsen-Smith later entered a guilty plea to first degree manslaughter (SDCL 22-16-15(1)) and DUI; Larsen-Smith

also admitted the part two information. The circuit court ordered a presentence investigation (PSI).

[¶4.] At sentencing, the wife and stepdaughter of the decedent read prepared statements on how the death had devastated their lives. The sentencing court addressed Larsen-Smith, and sentenced him to life without the possibility of parole on the manslaughter conviction and a consecutive ten-year sentence on the DUI conviction. Larsen-Smith appeals the sentence.

*Analysis*

[¶5.] Larsen-Smith challenges the constitutionality of his sentence. He argues that life without parole is disproportionate to his crime, and therefore violates the Eighth Amendment's prohibition against cruel and unusual punishment.

> It is well-settled that we employ very limited principles in our constitutional review of sentences. These principles include giving substantial deference to the legislature's broad authority to determine the types and limits of punishment; and the notion that the Eighth Amendment does not mandate adoption of any one penological theory. Consequently, a sentence within the statutory maximum will rarely be disturbed. This Court applies the gross disproportionality test when assessing the constitutionality of a particular sentence.

*State v. Iannarelli*, 2008 S.D. 121, ¶ 12, 759 N.W.2d 122, 125 (citations and internal quotation marks omitted).

[¶6.] "[T]o assess a challenge to proportionality we first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. If these circumstances fail to suggest gross

disproportionality, our review ends." *State v. Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d 575, 580. "It is a rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Iannarelli*, 2008 S.D. 121, ¶ 12, 759 N.W.2d at 125 (citation and internal quotation marks omitted).

[¶7.]        First-degree manslaughter in violation of SDCL 22-16-15(1) is a Class C felony. The maximum penalty for a Class C felony is life imprisonment. SDCL 22-6-1(3). Larsen-Smith's sentence is within the statutory maximum.

[¶8.]        To arrive at an appropriate sentence: "the sentencing court should 'acquire a thorough acquaintance with the character and history of the man before it.' This study should examine a defendant's 'general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.'" *Bonner*, 1998 S.D. 30, ¶ 19, 577 N.W.2d at 580 (citations omitted).

[¶9.]        The sentencing court acquired an appropriate acquaintance with Larsen-Smith. At the time of this offense, Larsen-Smith was nearly 31 years old. Larsen-Smith was not married and had a son. Larsen-Smith's mother was killed by a drunk driver when he was two years old. He was raised by his maternal grandparents. When not incarcerated, it appears that Larsen-Smith had maintained employment. However, Larsen-Smith had spent a great deal of time incarcerated.

[¶10.]        Since turning 18, Larsen-Smith pleaded guilty to seven previous DUI charges. Larsen-Smith was first incarcerated at the penitentiary in 1999. He has

been paroled six times and violated each time. Five of his violations were for DUI. He has spent no more than ten consecutive months outside of prison since 1999.

[¶11.]     On one occasion, a Sioux Falls police officer responded to a roll-over. Larsen-Smith, the driver, was able to get his vehicle upright. An individual attempted to crawl through the vehicle's window and remove Larsen-Smith from the vehicle. Larsen-Smith drove away with the person hanging from his window. The police reports indicate that the individual was nearly drug under the wheels of Larsen-Smith's vehicle. The PSI includes reports of other incidents involving eluding the police.

[¶12.]     Larsen-Smith's criminal history demonstrates his unwillingness to avoid alcohol, and to avoid driving after drinking. This unwillingness illustrates his disregard for the safety of the public. The conclusion from acquiring a thorough acquaintance with Larsen-Smith is that this tragic incident was highly probable as long as Larsen-Smith had the ability to obtain alcohol and a vehicle.

[¶13.]     Larsen-Smith argues that the sentencing court did not give enough weight to his injury in considering the danger he posed to society. At sentencing, a neurologist testified that Larsen-Smith suffered a brain injury as a result of the accident. This neurologist testified that Larsen-Smith will likely suffer continued lack of dexterity and strength on his right side and also complications with his sight. Larsen-Smith argues that these physical limitations would prevent him from driving again, which would eliminate the concern for public safety articulated by the sentencing court. But the fact and degree of Larsen-Smith's injury are questionable.

[¶14.]     The neurologist agreed that Larsen-Smith's treating physicians did not diagnose a brain injury.  Further, the State introduced a video of Larsen-Smith lifting weights in the exercise yard of the penitentiary.  While Larsen-Smith did not lift heavy weights, his agility and strength certainly did not appear so deficient as to physically prevent him from driving.  Finally, as pointed out by the State, the negative effects of alcohol have not prevented Larsen-Smith from driving in the past, leaving little assurance that limited strength and occasional minor vision problems would.

[¶15.]     Larsen-Smith accuses the sentencing court of improperly ignoring Larsen-Smith's prospects for rehabilitation.  Larsen-Smith argues that:

> a life sentence should only be imposed when a trial court[ ] can determine from the facts of the principal offense and the previous convictions that rehabilitation is so unlikely as to be removed from consideration in sentencing; that the interests of society demand that the [defendant] be kept off the streets for the rest of his life . . . .

*State v. Ramos*, 1996 S.D. 37, ¶ 17, 545 N.W.2d 817, 821 (citation and internal quotation marks omitted).  Larsen-Smith has been convicted of DUI eight times. Larsen-Smith concedes in his brief that he has completed alcohol treatment classes pursuant to earlier sentences.  Nothing in his history gives any hint that rehabilitation would work this time.  Incarceration is the only thing that has successfully prevented Larsen-Smith from drinking and driving.  His history proves that the interests of society demand the sentence imposed.

[¶16.]     Further, prospects for rehabilitation need not be considered each time a defendant receives a life sentence.  *State v. Milk*, 2000 S.D. 28, ¶ 18, 607 N.W.2d

14, 20. This Court "will address this subject only if we initially determine that there is a gross disproportionality in the sentence." *Id.* "Clearly there are some acts of such a criminal magnitude that they justify a life sentence whether the perpetrator is capable of rehabilitation or not. In such instances the sentence is not disproportionate to the crime." *Id.*

[¶17.] The charged conduct resulted in the death of a totally innocent man. The victim's family testified at sentencing. Not only did the death cause the anticipated emotional devastation, but the family had to sell their home. Larsen-Smith's relevant past conduct reveals his disregard for the safety of the public and the authority of law. Larsen-Smith has shown no responsiveness to rehabilitation – too many efforts toward that goal have failed. The sentence imposed does not appear grossly disproportionate. This Court's analysis need proceed no further. *Bonner*, 1998 S.D. 30, ¶ 17, 577 N.W.2d at 580.

*Conclusion*

[¶18.] The circuit court did not abuse its discretion when it sentenced Larsen-Smith to life without parole. The sentence does not appear grossly disproportionate to the crime. Larsen-Smith received a statutorily authorized sentence for his conviction. The circuit court properly acquired a thorough acquaintance with Larsen-Smith and imposed a sentence that took into consideration the safety of the public and Larsen-Smith's prospects for rehabilitation.

[¶19.] Affirmed.

[¶20.] KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.