#26248-a-GAS

**2012 S.D. 77**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

SARAH ELIZABETH SCHMIDT,                  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RANDALL L. MACY
Judge

* * * *

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


KAREN PAIGE HUNT of
Wilde & Hunt, Prof LLC
Spearfish, South Dakota                   Attorneys for defendant
                                          and appellant.


* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2012

OPINION FILED **11/07/12**

#26248

SEVERSON, Justice.

[¶1.] Sarah Elizabeth Schmidt was charged by an indictment dated July 1, 2010 with ten counts of grand theft, in violation of SDCL 22-30A-1 and 22-30A-17(1); three counts of identity theft, in violation of SDCL 22-40-8; and sixty-seven counts of forgery, in violation of SDCL 22-39-36. Pursuant to a plea agreement with the State, Schmidt pleaded guilty but mentally ill to ten counts of grand theft, a Class 4 felony, on May 26, 2011. Schmidt filed a motion to withdraw her guilty but mentally ill pleas prior to sentencing. The motion was denied. Schmidt was sentenced to ten years in the penitentiary on Counts I through IX, to run concurrent, and to ten years in the penitentiary on Count X, to run consecutive to Counts I through IX. With new counsel, Schmidt appeals, raising the following issues: 1) whether the circuit court abused its discretion in denying Schmidt's motion to withdraw her pleas of guilty but mentally ill; 2) whether Schmidt's due process rights were violated when she was denied the opportunity to review and comment on the entire presentence investigation report; 3) whether the representation afforded Schmidt constituted ineffective assistance of counsel; 4) whether Schmidt's sentence was cruel and unusual punishment under the Eighth Amendment.

**FACTS**

[¶2.] Schmidt was hired in 2004 to serve as the personal secretary for Rod Galland, the founder, president, and majority shareholder of IMPAK, International Molded Packaging Corporation, located in Central City, South Dakota. As Galland's personal secretary, Schmidt had considerable control over corporate

-1-

accounts and several of Galland's personal accounts and was primarily responsible for remitting payroll taxes to the IRS.

[¶3.] In April 2010, Galland's daughter, Brook Sebade, Director of Operations for IMPAK, discovered several payments had been made to her father's American Express card, which was primarily used when Galland was on business trips. Galland, however, was suffering from cancer and had not made any recent business trips. Sebade eventually discovered Schmidt had been using the American Express card to purchase personal items. When Sebade confronted Schmidt, Schmidt confessed to making charges on the card.

[¶4.] Upon learning about the thefts, Galland contacted Timothy R. Johns, Galland's corporate and personal counsel. Johns arranged to meet with Schmidt on April 9, 2010. At that time, Schmidt admitted she had been embezzling funds for the past two years from IMPAK's American Express credit card account in the amount of $20,000 and from Galland's personal checking account, his Capital One credit card account, and Chase credit card account in the amount of $40,000. On April 19, 2010, Schmidt signed an Admission of Liability, wherein she admitted to having embezzled over $60,000.

[¶5.] Johns soon realized Schmidt had been embezzling from ten different corporate and personal accounts belonging to Galland since January 2005, while still on felony probation for a November 2004 grand theft conviction in Butte County, South Dakota. She also forged Galland's signature on sixty-seven checks from Galland's checking account and failed to pay employee payroll taxes. As a

result, IRS liens were filed against IMPAK. The total amount embezzled exceeded $224,000 and the various tax liens equal $62,550.91.

[¶6.]     Schmidt was charged by an indictment dated July 1, 2010 with ten counts of grand theft, three counts of identity theft, and sixty-seven counts of forgery. The State also filed a Part II Information alleging Schmidt was a habitual offender. Schmidt was arraigned on August 31, 2010. She pleaded not guilty to each of the charges against her. At the arraignment, she requested court-appointed counsel. Eric Whitcher was appointed to represent Schmidt.

[¶7.]     At a January 11, 2011 status hearing, the circuit court granted defense counsel's motion for a psychiatric evaluation and ordered Schmidt to undergo a competency and forensic evaluation to determine her competency to proceed to trial and her state of mind at the time of the alleged crimes. The evaluation was completed by Stephen P. Manlove, M.D. of Manlove Psychiatric Group, P.C. in Rapid City, South Dakota.

[¶8.]     The report revealed Schmidt had attended approximately eight counseling sessions nearly twenty years ago and had been prescribed antidepressants by her primary care doctor, but stopped taking them voluntarily. The report indicated, however, that Schmidt was logical and coherent, without evidence of a thought disorder; she did not have auditory or visual hallucinations; she was of average cognition; and her psychiatric history revealed no previous hospitalizations or residential treatment. Dr. Manlove stated that in his opinion Schmidt was experiencing "a great deal of anxiety regarding the criminal charges against her and the consequences of those charges." Dr. Manlove suggested a

combination of psychotherapy and medication to treat Schmidt's anxiety so she could "function much better in the legal process." Schmidt did not begin taking the prescribed medication until the day before sentencing.

[¶9.] Schmidt entered a plea agreement with the State. The terms of the plea agreement specified that Schmidt would plead guilty but mentally ill to ten counts of grand theft. In exchange, the State would dismiss all remaining charges and the Part II Information alleging she was a habitual offender.

[¶10.] A change of plea hearing was held on May 26, 2011. During this hearing, the circuit court explained to Schmidt the nature of the charges against her, the penalties for each charge, her constitutional rights, and the terms of the plea agreement. The following exchange then took place between the circuit court and Schmidt:

> THE COURT: Is your plea voluntary?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And you understand your rights, and you waive the rights that I've explained to you today?
>
> THE DEFENDANT: Yes, sir.

Schmidt eventually pleaded guilty but mentally ill to ten counts of grand theft. The circuit court ordered a presentence investigation (PSI).

[¶11.] Prior to sentencing on September 1, 2011, Schmidt filed a pro se motion to withdraw her guilty but mentally ill pleas contending she did not enter into the plea knowingly or willingly because she was suffering from a mental illness; was under severe emotional and physical distress; and felt a tremendous

amount of pressure and coercion at the time she entered her pleas of guilty but mentally ill. As a result, Whitcher filed a motion to withdraw as counsel. The sentencing court denied both motions. Schmidt was sentenced to ten years in the penitentiary on Counts I through IX, to run concurrent, and to ten years in the penitentiary on Count X, to run consecutive to Counts I through IX.

## STANDARD OF REVIEW

[¶12.]     "We review a [circuit] court's refusal to permit a defendant to withdraw his guilty plea prior to sentencing under an abuse of discretion standard." *State v. Bailey*, 1996 S.D. 45, ¶ 11, 546 N.W.2d 387, 390. "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (quoting *State v. Engelmann*, 541 N.W.2d 96, 100 (S.D. 1995)). "We apply a de novo standard of review to claims of constitutional violations." *State v. Tiegen*, 2008 S.D. 6, ¶ 14, 744 N.W.2d 578, 585 (citing *State v. Dillon (Dillon I)*, 2001 S.D. 97, ¶ 12, 632 N.W.2d 37, 43). "A claim that a sentence is grossly disproportionate is reviewed by the standards set out in *State v. Bonner*, 1998 S[.]D[.] 30, ¶ 17, 577 N.W.2d 575, 580." *Id.*

## ANALYSIS

[¶13.]     **1.      Whether the circuit court abused its discretion in denying Schmidt's motion to withdraw her pleas of guilty but mentally ill.**

[¶14.]     SDCL 23A-27-11 provides:

> A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice a court after sentence may set aside a judgment of conviction and permit the defendant to withdraw his plea.

[¶15.]    As we most recently stated in *State v. Olson*,

> The withdrawal of a guilty plea before the imposition of sentence is within the sound discretion of the [circuit] court. When a defendant moves to withdraw a plea prior to sentencing, a court should exercise its discretion liberally in favor of withdraw. But, SDCL 23A-27-11 does not create an automatic right to withdraw a guilty plea. When deciding whether to allow a criminal defendant to withdraw his plea, the [circuit] court must look at the reasons why the plea is sought to be withdrawn and if the request to withdraw is obviously frivolous, the circuit court need not grant it.

2012 S.D. 55, ¶ 18, 816 N.W.2d 830, 835-36 (alteration in original) (citations omitted) (internal quotation marks omitted).

[¶16.]    A request to withdraw a guilty plea is frivolous if a defendant fails to provide "'a tenable reason why withdrawal should be permitted, a reason'" the court deems fair and just. *Everett v. U.S.,* 336 F.2d 979, 982 (D.C. Cir. 1964); *State v. Thielsen*, 2004 S.D. 17, ¶ 15, 675 N.W.2d 429, 433 (quoting *Engelmann*, 541 N.W.2d at 100).

> A defendant who stands before a court freely admitting his [crime] does not remotely meet the standard of offering a "fair and just reason" for withdrawing his plea of guilty prior to sentence. He must give some reason other than a desire to have a trial the basic purpose of which is to determine the very facts the defendant has just volunteered to the court on the record and while attended by his own counsel.

*Everett*, 336 F.2d at 984. Furthermore, "a defendant who has pleaded guilty no longer enjoys the presumption of innocence and, on a motion to withdraw the plea,

bears the burden of production and persuasion." *Thielsen*, 2004 S.D. 17, ¶ 19, 675 N.W.2d at 434 (citing *Bailey*, 1996 S.D. 45, ¶ 13, 546 N.W.2d at 391).[1]

[¶17.]     In *State v. Grosh*, 387 N.W.2d 503, 506 (S.D. 1986), we set forth a non-exclusive list of potential factors a circuit court should consider in deciding whether to allow a defendant to withdraw a guilty plea.  Those factors include: 1) actual innocence; 2) the guilty "plea was contrary to truth[;]" 3) "misapprehension of the facts[;]" 4) incorrect advice from counsel; 5) misunderstanding of the guilty "plea's effect or mistake or misconception of the nature of the charges[;]" and 6) the "plea was procured by fraud, mistake, misapprehension, fear, or improper means[.]" *Id.* (additional citations omitted).

[¶18.]     Because Schmidt pleaded guilty, and thus is no longer presumed innocent, she had the burden of providing "a persuasive reason why withdrawal should be permitted[.]" *Bailey*, 1996 S.D. 45, ¶ 13, 546 N.W.2d at 391.  Schmidt did not point to a single factor set forth in *Grosh* in support of her motion.  Instead, Schmidt contends an alleged mental impairment rendered her incapable of entering her guilty pleas knowingly and voluntarily.[2]  Our review is limited to whether

---

1.     Here, we note that when the circuit court gave Schmidt an opportunity to address her motion to withdraw her pleas of guilty but mentally ill, she conceded that she would "like a chance to be heard on the matter in front of a jury."

2.     From the record, it appears Schmidt also maintained she was under severe emotional and physical distress and felt a tremendous amount of pressure and coercion at the time she entered her guilty but mentally ill pleas; however, she did not provide any additional factual support for those claims during the motion hearing or raise them on appeal.

Schmidt's mental state at the time she pleaded guilty but mentally ill is a tenable reason to allow withdrawal.

*Schmidt's Mental State*

[¶19.] "Whether an accused is capable of making the 'reasoned choice' essential to the validity of a guilty plea and the waiver of constitutional rights such as the plea entails 'depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" *Id.* ¶ 23 (quoting *United States v. Masthers*, 539 F.2d 721, 726 (D.C. Cir. 1976)). "'[W]e will look to the totality of the circumstances to determine whether a guilty plea was knowingly and voluntarily entered.'" *Id.* (quoting *State v. Lohnes*, 344 N.W.2d 686, 688 (S.D. 1984)).

[¶20.] "'A plea is intelligent and voluntary when the accused has a full understanding of his constitutional rights and, having that understanding, waives those rights by a plea of guilty.'" *Olson*, 2012 S.D. 55, ¶ 19, 816 N.W.2d at 836 (quoting *State v. Beckley*, 2007 S.D. 122, ¶ 8, 742 N.W.2d 841, 843). A defendant must "'be advised of his rights relating to self-incrimination, trial by jury, and confrontation,'" and "'intentionally relinquish or abandon [those] rights.'" *Id.* (quoting *Monette v. Weber*, 2009 S.D. 77, ¶ 10, 771 N.W.2d 920, 924) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969)). The record must demonstrate "in some manner that the defendant understood [her] rights" and the consequences of her guilty plea "in order for the defendant's plea to be entered intelligently and voluntarily." *Id.* ¶ 20 (quoting *State v. Apple*, 2008 S.D. 120, ¶ 10, 759 N.W.2d 283, 287).

[¶21.]    Schmidt was forty-two at the time she entered her guilty plea. Her highest level of education is a Bachelor's degree. Schmidt's criminal record reveals she had previous experience with plea negotiations and understood the consequences of entering a guilty plea.[3] Schmidt was represented by counsel at all relevant stages of the legal proceeding and had sufficient time to discuss the plea agreement with counsel. The circuit court explained to Schmidt each of her constitutional rights during both the arraignment and change of plea hearing. In addition, the circuit court advised Schmidt of the rights she was giving up by pleading guilty but mentally ill immediately before she entered her plea. Schmidt assured the court she fully understood her rights and the consequences of her guilty plea. Thus, the record supports the circuit court's finding that Schmidt entered her guilty but mentally ill pleas knowingly and voluntarily.

[¶22.]    However, Schmidt maintains her decision-making ability was reduced at the time she entered her guilty but mentally ill pleas because her anxiety was untreated. The circuit court rejected Schmidt's argument noting "there was no indication by Ms. Schmidt that she was under pressure or that she was unable to consult with her attorney or understand the proceedings." Furthermore, the report prepared by Dr. Manlove suggests Schmidt was able to understand the proceedings. Dr. Manlove's report revealed Schmidt was logical and coherent, without evidence of a thought disorder; she did not have auditory or visual hallucinations; and she was of average cognition. There was no showing of mental illness impacting

---

3.    Schmidt entered into a plea agreement and pleaded guilty to grand theft in Butte County, South Dakota on September 30, 2004.

Schmidt's ability to proceed. Based upon the facts and circumstances surrounding the case, Schmidt has not set forth a tenable reason to withdraw her guilty but mentally ill pleas.

*Prejudice*

[¶23.] Alternatively, Schmidt contends the circuit court should have exercised its discretion liberally in favor of withdrawal because the State failed to produce evidence of detrimental reliance or prejudice. As we explained in *Bailey*,

> Although we have previously stated that the [circuit] court's discretion should be exercised liberally in favor of withdrawal unless the State has been prejudiced, this does not mean, *ipso facto*, that where the State fails to show prejudice, the withdrawal should be automatically granted. There is no absolute right to withdrawal of a guilty plea.

1996 S.D. 45, ¶ 29, 546 N.W.2d at 393 (citing *State v. Losieau*, 266 N.W.2d 259, 262 (S.D. 1978)). "'While possible prejudice to the prosecution is . . . a factor to be considered [when deciding a presentence motion to withdraw a guilty plea], absence of prejudice to the prosecution, by itself, is insufficient to mandate permission for withdrawal of a guilty plea.'" *Id.* (quoting *State v. Clark*, 722 P.2d 322, 326 (N.M. 1989)) (alteration in original) (citations omitted).

[¶24.] There was no showing of detrimental reliance or prejudice on the part of the State in the record, and the State does not argue that it was prejudiced on appeal. Nevertheless, this factor, standing by itself, cannot mandate withdraw of Schmidt's guilty but mentally ill pleas.

[¶25.] The circuit court did not abuse its discretion in concluding that Schmidt's attempt to withdraw her plea was without sufficient support in light of the totality of the circumstances. Schmidt did not provide a persuasive reason why

withdrawal should be permitted and the absence of prejudice does not create an automatic right to withdraw a guilty plea. *See Grosh*, 387 N.W.2d at 506 (holding that even in the absence of detrimental reliance or prejudice, the circuit court did not abuse its discretion when no tenable reason to withdraw a guilty plea was provided).

[¶26.] **2. Whether Schmidt's due process rights were violated when she was denied the opportunity to review and comment on the entire presentence investigation report.**

[¶27.] Schmidt contends her due process rights were violated when she was not given an opportunity to review the PSI in its entirety and provide meaningful comment. SDCL 23A-27-7 provides,

> Before imposing sentence a court shall disclose the report of the presentence investigation to the defendant, the defendant's counsel, if represented by counsel, and the prosecuting attorney, but the court may exclude any recommendation as to sentence, and other material that, in the opinion of the court, contains a diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons. The court shall afford the defendant, the defendant's counsel, or the prosecuting attorney an opportunity to comment thereon and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

As we noted in *Brakeall v. Weber*, "[O]ur rule does not require that the sentencing court *verify* that counsel and defendant have discussed and reviewed the report. Instead, SDCL 23A-27-7 requires *disclosure* of the report to the defendant *and* his counsel, if represented."[4] 2003 S.D. 90, ¶ 25, 668 N.W.2d 79, 87.

---

4. The *Brakeall* Court distinguished SDCL 23A-27-7 from its federal

(continued . . .)

[¶28.]     At the sentencing hearing, the circuit court and defense counsel engaged in the following colloquy regarding the PSI:

> THE COURT: Mr. Whitcher, have you and your client reviewed the presentence investigation?
>
> MR. WHITCHER: Not exactly, Your Honor. Ms. Schmidt had filed a motion for withdrawal of her guilty plea last week, and then I had also filed a motion to withdraw in this matter, so I'd ask the Court to address those issues.
>
> THE COURT: Well, the presentence investigation was completed the 9th day of August, 2011. Have you and your client reviewed it?
>
> MR. WHITCHER: I have reviewed it, Your Honor. She has read a small portion of it in the hall just now.

[¶29.]     Schmidt contends merely providing access to the PSI is not "disclosure" within the meaning of SDCL 23A-27-7; whereas, the State argues that the requirements of SDCL 23A-27-7 are met if the defendant is provided access to the PSI. Therefore, we must consider what constitutes "disclosure" under SDCL 23A-27-7.

---

(. . . continued)
counterpart, Fed. R. Crim. P. 32(c)(3)(a). At that time, Rule 32(c)(3)(a) provided, "before imposing sentence the Court must verify that the defendant and defendant's counsel have read and discussed the presentence report." The federal counterpart to SDCL 23A-27-7 is now Fed. R. Crim. P. 32(i)(1)(A) which provides that the sentencing court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report."

[¶30.] Schmidt cites *State v. Skaff*, 447 N.W.2d 84 (Wis. Ct. App. 1989) to support her position. In *Skaff*, the trial court refused to allow the defendant to read his PSI. *Id.* at 85. The trial court reasoned that a defendant, represented by counsel, was not allowed to read his PSI on the premise that confidentiality needed to be maintained in order for the report to be effective. *Id.* at 86. On appeal, the court determined the defendant was entitled to obtain a copy of the PSI stating, "it would be contrary to the purpose and policy of sec. 972.15(2) to withhold a PSI from a defendant simply because he or she is represented by counsel."[5] *Id.* at 88. *Skaff*, however, "did not establish an affirmative duty [either] on the court to insure that a copy of the PSI [was] *timely* delivered to [a] defendant" or on "defense counsel to share the PSI with [a] defendant." *State v. Flores*, 462 N.W.2d 899, 901 (Wis. Ct. App. 1990), *overruled on other grounds by State v. Knight*, 484 N.W.2d 540, 544 n.6 (Wis. 1992) (emphasis added).

[¶31.] The PSI was completed twenty-three days before sentencing. Unlike in *Skaff* and *Brakeall*, Schmidt was not denied access to the PSI. Before sentencing, Schmidt was able to review the PSI, albeit briefly, in the hallway. Neither Schmidt nor defense counsel requested additional time to review the PSI. Nevertheless, Schmidt contends that "once the court found out that [she] had only read a small portion of the report before sentencing, it had further obligation to disclose the report to her, in full, pursuant to SDCL 23A-27-7."

---

5. W.S.A. 972.15(2) provides, "When a presentence investigation report has been received the judge shall disclose the contents of the report to the defendant's attorney and to the district attorney prior to sentencing. When the defendant is not represented by an attorney, the contents shall be disclosed to the defendant."

[¶32.]     Indeed, where, as here, the court becomes aware that a defendant has reviewed only a small portion of the PSI, the better practice is to suspend the hearing and provide the defendant more time to review the PSI.  However, neither *Skaff,* nor our decision in *Brakeall,* require the circuit court to ensure a copy of the PSI was timely delivered to Schmidt or that she had an opportunity to review the entire PSI.  *See People v. Daniels*, 386 N.W.2d 609, 611 (Mich. 1986) ("The statute [M.C.L. § 771.14(4); M.S.A. § 28.1144(4)] merely requires that the court 'shall *permit*' the defendant to review the presentence investigation report prior to sentencing.  It does not require the court to verify on the record that the defendant has reviewed or been given the opportunity to review the presentence report prior to sentencing but, rather, prohibits the court from denying counsel or the defendant access to the report.").  Once the court provided Schmidt access to the PSI, the court had no further obligation under SDCL 23A-27-7.  Therefore, under these circumstances, Schmidt's due process rights were not violated when she did not review the entire PSI prior to sentencing.

[¶33.]     Even if the requirements of SDCL 23A-27-7 were not met, Schmidt is not automatically entitled to resentencing.  We must consider whether the court's error requires a remand for re-sentencing.  *Brakeall*, 2003 S.D. 90, ¶ 25, 668 N.W.2d at 87.  "[R]elief on the basis of an asserted due process violation requires a showing of prejudice."  *Id.* ¶ 26.  The record demonstrates that neither Schmidt nor defense counsel objected to the PSI or indicated to the circuit court inaccuracies existed therein.  Furthermore, Schmidt does not indicate what, if any, additional matters she would have raised at sentencing had she been given an opportunity to

read the entire PSI. Finally, Schmidt's brief argues broadly that she was unable to refute, explain, or supplement the PSI because she was not aware of its full contents, but she fails to dispute a single component of the PSI. Thus, there is no showing of prejudice on these facts entitling Schmidt to relief.

[¶34.]    3.    **Whether the representation afforded Schmidt constituted ineffective assistance of counsel.**

[¶35.]    Schmidt contends she received ineffective assistance of counsel and the case should be remanded to allow her to present her motion to withdraw her pleas of guilty but mentally ill with new counsel. She alleges defense counsel was deficient for three reasons: 1) he provided virtually no representation during her motion to withdraw her guilty but mentally ill pleas; 2) he did not ask for a continuance or provide her an opportunity to review the entire PSI; and 3) he failed to fully examine potential witnesses and assess her mental health status.

[¶36.]    "Ineffective-assistance-of-counsel claims generally are not considered on direct appeal." *State v. Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d 706, 714 (citing *State v. Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d 250, 256). "'The preferred arena for an ineffective assistance claim is a habeas corpus proceeding.'" *Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d at 256 (quoting *Dillon*, 2001 S.D. 97, ¶ 28, 632 N.W.2d at 48). "The reason is to allow 'attorneys charged with ineffectiveness [to] explain or defend their actions and strategies, and thus a more complete picture of what occurred is available for review.'" *Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d at 714 (quoting *Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d at 256) (alteration in original). "This Court will 'depart from this principle only when trial counsel was so ineffective and counsel's representation so casual as to represent a manifest usurpation of [the

defendant's] constitutional rights.'" *Id.* (quoting *Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d at 256) (alteration in original).

[¶37.]    Schmidt maintains that her claim should be decided on direct appeal because defense counsel's representation was a manifest usurpation of her constitutional rights. From the record, this does not appear to be "one of those rare cases where an ineffective-assistance-of-counsel claim is ripe for review on direct appeal[.]" *Id.* ¶ 20. Moreover, the record is insufficient to allow for the appropriate appellate review. *See State v. Petersen*, 515 N.W.2d 687, 688 (S.D. 1994) ("[I]t is only through habeas corpus that a sufficient record can be made to allow the appropriate review."). Thus, we decline to consider this claim on direct appeal.

[¶38.]    4.    **Whether Schmidt's sentence was cruel and unusual punishment under the Eighth Amendment.**

[¶39.]    Schmidt contends the sentences she received constitute cruel and unusual punishment in violation of the Eighth Amendment. "'Sentencing decisions are perhaps the most difficult responsibility for trial judges, encompassing circumstances both obvious and elusive.'" *State v. Bruce*, 2011 S.D. 14, ¶ 28, 796 N.W.2d 397, 405-06 (quoting *Bonner*, 1998 S.D. 30, ¶ 11, 577 N.W.2d at 578). "'It is not for us to engage in appellate resentencing, or to micromanage the administration of criminal justice in South Dakota, even when individual trial judges impose widely different punishments for the same offense.'" *Id.* "Instead, '[w]e take an extremely deferential review of sentencing–generally, a sentence within the statutory maximum will not [be] disturbed on appeal.'" *Id.* (quoting *Bonner*, 1998 S.D. 30, ¶ 10, 577 N.W.2d at 578) (alterations in original).

[¶40.]	In evaluating Schmidt's claim,

> We first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court. We also consider the gravity of the offense and the harshness of the penalty; and other relevant factors, such as the effect this type of offense has on society. If the sentence does not appear grossly disproportionate, no further review is necessary. If the sentence does appear grossly disproportionate, an intra- and inter-jurisdictional analysis shall be conducted.

*Olson*, 2012 S.D. 55, ¶46, 816 N.W.2d at 842 (citations omitted) (internal quotation marks omitted).

[¶41.]	We cannot conclude Schmidt's sentences were grossly disproportionate. Grand theft in violation of SDCL 22-30A-1 and 22-30A-17 is a Class 4 felony. SDCL 22-30A-17. The maximum penalty for a Class 4 felony is ten years in the state penitentiary. SDCL 22-6-1. Thus, Schmidt's sentences "were within the statutory limitations and are [ ]afforded 'substantial deference.'" *Olson*, 2012 S.D. 55, ¶47, 816 N.W.2d at 842 (citing *State v. Brim*, 2010 S.D. 74, ¶ 22, 789 N.W.2d 80, 87).

[¶42.]	In addition, at sentencing, the circuit court heard testimony from Sebade, Galland's daughter, explaining that her mother was required to sell most of her property; IRS liens exceeding $50,000 were imposed upon IMPAK; jobs were jeopardized; and bankruptcy was and is within the realm of possibility because of Schmidt's unlawful activity. The circuit court also considered the "extraordinary amount of theft and deception that ha[d] gone on for at least the last six years" and the likelihood that restitution [would] not be paid.

[¶43.] Additionally, we have stated:

> To arrive at an appropriate sentence: the sentencing court should acquire a thorough acquaintance with the character and history of the man before it. This study should examine a defendant's general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.

*State v. Larsen-Smith*, 2011 S.D. 93, ¶ 8, 807 N.W.2d 817, 819 (citation omitted) (internal quotation marks omitted).

[¶44.] There is no showing that the sentencing court failed to acquire a thorough acquaintance with Schmidt. In addition to the sentencing hearing, the court was provided with a PSI that the record shows the court had reviewed.

[¶45.] Finally, the circuit court observed that Schmidt had a prior criminal history. She was convicted of grand theft on November 4, 2004 in Butte County, South Dakota and sentenced to five years in the South Dakota Women's Prison. Her sentence was modified to a suspended imposition of sentence and she was placed on probation for four years. Although Schmidt successfully completed probation, the circuit court found that she was stealing from Galland while on felony probation.

[¶46.] The circuit court did not abuse its discretion when it sentenced Schmidt to twenty years in the penitentiary. "The circuit court properly considered the gravity of [Schmidt's] offenses, the effect those offenses have on society, [Schmidt's] criminal record, and the likelihood of rehabilitation." *Olson*, 2012 S.D. 55, ¶ 49, 816 N.W.2d at 843. Schmidt received the statutorily authorized sentences. The sentences imposed do not appear grossly disproportionate. Thus, no further review is necessary.

#26248

[¶47.] Affirmed.

[¶48.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and WILBUR, Justices, concur.