#27412-a-LSW

**2016 S.D. 10**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

JOSEPH ALLEN GOLLIHER-WEYER,               Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RICHARD A. SOMMERS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

GRANT FLYNN
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                                              and appellee.


ADAM ALTMAN
Aberdeen, South Dakota                     Attorney for defendant
                                              and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 11, 2016

OPINION FILED **02/03/16**

#27412

WILBUR, Justice

[¶1.]    A jury convicted defendant of fourth-degree rape in violation of SDCL 22-22-1(5). Defendant appeals. He asserts that his trial counsel was ineffective for her failure to understand the rules of evidence, namely SDCL 19-19-412. Defendant also claims the circuit court erred when it concluded that defendant was not entitled to a Rule 412 hearing because defendant did not file a motion for a hearing 14 days before trial. Defendant contends the circuit court abused its discretion when it restricted his cross-examination of the victim to questions related to the victim's sexual encounters with defendant. Lastly, defendant claims the circuit court improperly considered his juvenile psychological records when it sentenced defendant to fifteen years in the South Dakota State Penitentiary. We affirm.

## Background

[¶2.]    In October 2013, A.A. invited Joseph Allen Golliher-Weyer (Weyer) to watch television at a mutual friend's house in Aberdeen, South Dakota. After watching television with A.A. for some time, Weyer left the living room to go to a bedroom. It is disputed whether Weyer went to the bedroom alone or with A.A. Weyer claimed he entered the bedroom alone to sleep. One witness claimed A.A. and Weyer entered the bedroom together. Regardless, A.A. later alleged that while in the bedroom she and Weyer had sexual intercourse. At that time, Weyer was 18 years old and A.A. was 14 years old. Under SDCL 22-22-1(5) an act of sexual penetration is rape "[i]f the victim is thirteen years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim." A

-1-

warrant issued for Weyer's arrest on January 14, 2014, for his violation of SDCL 22-22-1(5). Weyer denied that he had sexual intercourse with A.A. and requested a jury trial.

[¶3.]        During the jury trial, Weyer's counsel sought to introduce evidence that A.A. had made prior false allegations of sexual intercourse with other individuals. The State objected during defense counsel's opening statement. The court held a discussion outside the presence of the jury. The State argued that SDCL 19-19-412 precludes the admission of evidence related to A.A.'s prior sexual encounters and that the evidence does not meet the statutory exceptions. The State also argued that Weyer cannot introduce evidence of A.A.'s prior sexual history because he failed to request a hearing to determine admissibility 14 days prior to trial. Counsel for Weyer responded that she did not need to request a hearing because she sought to admit the evidence to impeach A.A., not to prove A.A.'s sexual predisposition.

[¶4.]        The circuit court granted the State's objection. It ruled "that it appears that based on this case law there should have been some advanced notice given if we're going to talk about her sexual history." According to the court, "both the federal rule and this case law talk about the opportunity to have that hearing in advance of trial" for the court "to conduct an in camera hearing and make a ruling on [it] after the evidence of the other allegations would be presented, and the victim would have a right to attend and be heard." Because Weyer did not request a hearing 14 days prior to trial, the court held that "based on that case and federal

rule that you don't have that opportunity to have that hearing at this point in time, so that testimony would not be admissible[.]"

[¶5.]          A.A. testified at trial.  During cross-examination, A.A. mentioned that she listed the names of "everybody that I did" and corresponding dates in a school agenda.  Defense counsel asked A.A. about these other individuals, and the State objected.  The circuit court instructed defense counsel to limit the questions to entries in the agenda implicating Weyer.  Other witnesses testified at trial, and the court prohibited Weyer from questioning those witnesses regarding whether A.A. had prior sexual encounters with others.

[¶6.]          On October 28, 2015, the jury found Weyer guilty of fourth-degree rape.  Prior to sentencing, the court ordered that Weyer undergo a psychosexual evaluation and a psychological evaluation.  Prior to the examinations, Weyer specifically refused to give the examiners consent to access information from his juvenile criminal record and juvenile treatment facilities.  The report from Weyer's psychological evaluation specifically referenced the records from Weyer's juvenile treatment facilities.  At the sentencing hearing, Weyer objected to the court's consideration of the evaluator's report.  The court overruled Weyer's objection.  The court sentenced Weyer to fifteen years in the state penitentiary with seven years suspended.

[¶7.]          Weyer appeals, asserting the following issues:

> 1. Whether trial counsel was ineffective for not filing a motion to introduce the victim's past sexual behavior pursuant to SDCL 19-19-412.

2. Whether the circuit court erred when it denied defendant a hearing pursuant to SDCL 19-19-412 once the trial had commenced.

3. Whether the circuit court abused its discretion when it limited defendant's opportunity to impeach the victim after she allegedly opened the door to her sexual history.

4. Whether the circuit court violated defendant's rights when it considered a presentence investigation report that included defendant's juvenile psychological records.

## Analysis

### 1. Ineffective Assistance of Counsel

[¶8.] Weyer claims his trial counsel was ineffective because she did not understand SDCL 19-19-412, failed to timely request a Rule 412 hearing, and relied on a repealed statute as sole support for trial strategy.* According to Weyer, his trial counsel's ineffectiveness warrants our review on direct appeal because it "destroyed" any chance that the adversarial process could function properly. To prevail on his claim, Weyer must establish both that his trial counsel was ineffective and that he was prejudiced as a result. *See State v. Thomas*, 2011 S.D. 15, ¶ 21, 796 N.W.2d 706, 713. Counsel is ineffective when a defendant shows "that counsel's representation fell below an objective standard of reasonableness." *Id.* Prejudice exists when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Hannemann*, 2012 S.D. 79, ¶ 11, 823 N.W.2d 357, 360 (quoting *Thomas*, 2011 S.D. 15, ¶ 28, 796 N.W.2d at 715). "Absent exceptional circumstances, we will not

---

* Weyer's attorney on appeal is different than his trial counsel.

address an ineffective assistance claim on direct appeal." *State v. Dillon*, 2001 S.D. 97, ¶ 28, 632 N.W.2d 37, 48 (citing *State v. Hays*, 1999 S.D. 89, ¶ 14, 598 N.W.2d 200, 203). "We depart from this principle only when trial counsel was 'so ineffective and counsel's representation "so casual" as to represent a "manifest usurpation" of the defendant's constitutional rights.'" *Id.*

[¶9.]        According to appellate counsel, Weyer's trial counsel's representation manifestly usurped Weyer's constitutional rights because counsel did not understand SDCL 19-19-412 and "based her entire strategy on [this] glaring mistake." Based on the current record, we are unable to examine trial counsel's strategy or obtain a complete picture of counsel's understanding of SDCL 19-19-412. Did counsel seek to impeach witnesses or attempt to introduce evidence of prior false accusations? We have said that "it is only through habeas corpus that a sufficient record can be made to allow the appropriate review" by this Court. *State v. Petersen*, 515 N.W.2d 687, 688 (S.D. 1994) (quoting *State v. Jett*, 474 N.W.2d 741, 743 (S.D. 1991)). This is because, through habeas, an attorney charged with ineffectiveness can explain or defend actions and strategies. *Thomas*, 2011 S.D. 15, ¶ 23, 796 N.W.2d at 714. And this Court can obtain a "more complete picture of what occurred[.]" *Id.* (quoting *State v. Arabie*, 2003 S.D. 57, ¶ 20, 663 N.W.2d 250, 256). Because the current record is insufficient to allow for an appropriate review, we decline to address Weyer's claim at this time. *See State v. Schmidt*, 2012 S.D. 77, ¶ 37, 825 N.W.2d 889, 899.

## 2.     Denial of a Hearing under SDCL 19-19-412

[¶10.]     According to Weyer, "[o]nce it became clear that defense counsel intended to introduce evidence of A.A. lying about past instances of sexual behavior, the [c]ourt should have allowed the *in camera* Rule 412 hearing, despite the lack of 14 days [sic] advance notice." In Weyer's view, the circuit court erred as a matter of law when it interpreted SDCL 19-19-412 to mean that 14 days' advance notice is an absolute prerequisite to a Rule 412 hearing, when in fact the statute provides the court discretion to determine whether good cause requires a different time for filing, including filing during trial.

[¶11.]     In response, the State avers that the circuit "court was familiar with the rule and recognized that the rule allows for a hearing during trial for good cause." It then claims that the "court determined Defendant did not demonstrate good cause to warrant a Rule 412 hearing be held during trial." The State's reading of the court's ruling cannot be supported. In fact, a review of the court's ruling reveals that the court believed it did not have discretion to hold a Rule 412 hearing absent a motion filed 14 days before trial. It interpreted SDCL 19-19-412 to require an "opportunity to have a hearing in advance of trial." Then, according to the court, because "we can't do that at this point in time," it denied Weyer the opportunity to have a Rule 412 hearing.

[¶12.]     We review issues of statutory interpretation de novo. *State v. Moran*, 2015 S.D. 14, ¶ 10, 862 N.W.2d 107, 110. At the time of Weyer's trial, SDCL 19-19-412 provided in part:

> (1) A party intending to offer evidence under subdivision (b)
> must:

> (A) file a written motion at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered *unless the court, for good cause requires a different time for filing or permits filing during trial*; and
>
> (B) serve the motion on all parties.

(Emphasis added.) The circuit court erred when it interpreted SDCL 19-19-412 to mean that, absent notice 14 days before trial, Weyer could not have a hearing. But the court's error does not automatically necessitate reversal or a new trial. To require reversal the error must be prejudicial. *State v. Fool Bull*, 2008 S.D. 11, ¶ 23, 745 N.W.2d 380, 388; *State v. Latham*, 519 N.W.2d 68, 71 (S.D. 1994), *overruled on other grounds by State v. Giroux*, 2004 S.D. 24, 676 N.W.2d 139; SDCL 23A-44-14. "Prejudice, sufficient to require relief, must 'in all probability' have 'produced some effect upon the final result and affected rights of the party assigning it.'" *State v. Reay*, 2009 S.D. 10, ¶ 46, 762 N.W.2d 356, 369 (quoting *State v. Krebs*, 2006 S.D. 43, ¶ 19, 714 N.W.2d 91, 99).

[¶13.] From our review, Weyer has not met his burden of proving prejudicial error. *See Fool Bull*, 2008 S.D. 11, ¶ 23, 745 N.W.2d at 388 (actual showing of prejudice required); *State v. Guthmiller*, 2003 S.D. 83, ¶ 28, 667 N.W.2d 295, 305. He presents no evidence that, had the hearing been granted, A.A.'s prior sexual history would have been admitted. At trial, Weyer did not seek to admit A.A.'s prior sexual behavior "to prove that a person other than the accused was the source of semen, injury or other physical evidence" or to prove consent. *See* SDCL 19-19-412(b)(1)(A), (B). Nor has Weyer established that the evidence he sought to admit was relevant and material to a fact issue in the case. *See State v. Pugh*, 2002 S.D.

16, ¶ 14, 640 N.W.2d 79, 83-84. Weyer merely claims the evidence is relevant to establish that A.A. lied about having sexual intercourse with Weyer because A.A. lied about previous sexual encounters. Yet, beyond allegations of mere denial, there is no evidence that A.A.'s previous sexual encounters did not occur. We have said that evidence related to a victim's prior sexual allegations are relevant and admissible only if the prior sexual allegations are "demonstrably false." *Guthmiller*, 2003 S.D. 83, ¶ 28, 667 N.W.2d at 305. Arguably false is insufficient. *Dillon*, 2001 S.D. 97, ¶ 26, 632 N.W.2d at 47. And proof that the prior allegations are demonstrably false requires more than mere denial of the accusations. *Id.*; *State v. Most*, 2012 S.D. 46, ¶ 25, 815 N.W.2d 560, 567.

### 3.    Limited Cross-Examination of A.A.

[¶14.]    During Weyer's cross-examination of A.A., A.A. mentioned that she recorded the names and dates of her past sexual encounters in a school agenda. Weyer attempted to elicit from A.A. the names and dates documenting A.A.'s sexual encounters with males other than Weyer. In response to the State's objection, the circuit court limited Weyer's questions to entries in the school agenda related to Weyer. Weyer claims the court abused its discretion when it limited his cross-examination because A.A. opened the door "to her past sexual behavior, including any false allegations about having sex, when she claimed that, in her school agenda, she 'wrote down everybody that I did.'"

[¶15.]    "Courts have discretion to allow an ordinarily inadmissible inquiry when an adversary 'opens the door' to that line of inquiry." *State v. Buchholtz*, 2013 S.D. 96, ¶ 12, 841 N.W.2d 449, 454 (citing *Veith v. O'Brien*, 2007 S.D. 88, ¶ 27, 739

-8-

N.W.2d 15, 24 (citations omitted); *State v. Letcher*, 1996 S.D. 88, ¶¶ 25-26, 552 N.W.2d 402, 406-07 (citations omitted)). We presume the court's evidentiary rulings are correct and review only for an abuse of discretion. *State v. Hauge*, 2013 S.D. 26, ¶ 24, 829 N.W.2d 145, 152. A.A.'s statement that she documented her previous sexual encounters, including her encounter with Weyer, did not open the door to Weyer's questions concerning A.A.'s prior sexual encounters with males other than Weyer. By making the statement, A.A. did not suggest that she lied about prior sexual encounters, or that because she had sex with others, she did not have sex with Weyer. The circuit court did not abuse its discretion when it limited Weyer's cross-examination of A.A. to entries related to Weyer.

### 4. Juvenile Psychological Records

[¶16.]      Prior to sentencing, the circuit court ordered that Weyer undergo a psychosexual evaluation. The evaluator concluded that Weyer "could be a psychopath." In response, the court ordered that Weyer undergo additional psychological testing. Prior to the psychosexual evaluation and psychological evaluation, Weyer intentionally refused to grant the examiners access to his juvenile criminal history and juvenile psychological records. Dr. Pribyl conducted Weyer's psychological evaluation. He specifically relied on Weyer's juvenile psychological records in making his assessment and declared such in his report to the sentencing court.

[¶17.]      On appeal, Weyer argues that his "actions as a juvenile should not affect his sentencing for crimes committed as an adult." He contends that his sentence is invalid because the court considered his juvenile psychological records

via Dr. Pribyl's report. Yet Weyer directs us to no law denying a sentencing court authority to consider his juvenile psychological records when fashioning an appropriate sentence. *See State v. Pellegrino*, 1998 S.D. 39, ¶ 22, 577 N.W.2d 590, 599 (failure to cite authority waives the issue). It is well established that "[a]n appropriate sentence requires that the sentencing court 'acquire a thorough acquaintance with the character and history of the person before it. This study should examine a defendant's general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.'" *State v. Craig*, 2014 S.D. 43, ¶ 29, 850 N.W.2d 828, 837 (quoting *State v. Hinger*, 1999 S.D. 91, ¶ 21, 600 N.W.2d 542, 548). Further, under SDCL 22-22-1.3, a report following a psychosexual evaluation shall include: "the offender's sexual history; an identification of precursor activities to sexual offending; intellectual, adaptive and academic functioning; social and emotional functioning; previous legal history; previous treatment history; victim selection and age; risk to the community; and treatment options recommended." *See* SDCL 26-7A-106 (supporting that the court can consider Weyer's prior adjudications, dispositions, and evidence given in his prior juvenile proceedings "for sentencing purposes").

[¶18.] Certainly, Weyer's juvenile psychological records could reflect on his sexual history, his precursor activities to sexual offending, his intellectual, adaptive, and academic functioning, and his social and emotional functioning. The records relate to his previous treatment history and would necessarily assist in determining his risk to the community. The sentencing court did not err when it

#27412

considered Weyer's juvenile psychological records to determine an appropriate sentence.

[¶19.] Affirmed.

[¶20.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.